UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTIAN PERREAULT HAMEL,<br>      Plaintiff,<br><br>      v.<br><br>THE WHEATLEIGH CORPORATION,<br>L. LINFIELD SIMON, SUSAN SIMON,<br>and MARC WILHELM,<br>      Defendants. | )<br>)<br>)<br>)<br>)   Civil No. 3:18-cv-30113-KAR<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Dkt No. 63)

ROBERTSON, U.S.M.J.

      Plaintiff Christian Perreault Hamel ("Plaintiff") is a former employee of the defendant The Wheatleigh Corporation ("Wheatleigh"), which was owned and operated by the remaining defendants L. Linfield Simon, Susan Simon, and Marc Wilhelm ("Wilhelm") (collectively, "Defendants"). Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") by misclassifying him as an exempt employee and failing to pay him overtime wages. Defendants assert that Plaintiff fits within the executive exemption and was not entitled to overtime compensation. Defendants have moved for summary judgment (Dkt. No. 63). The parties have consented to this court's jurisdiction (Dkt. No. 14). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, Defendants' motion is DENIED.

I.     FACTS[1]

Wheatleigh is a 19-room luxury hotel and fine-dining restaurant located in Lenox, Massachusetts (Def. SOF ¶ 1; Pl. Resp. ¶ 1).  Plaintiff applied for a food and beverage management position with Wheatleigh on October 15, 2016, and he was ultimately hired as Wheatleigh's "Restaurant Manager" (Def. SOF ¶¶ 2, 8; Pl. Resp. ¶¶ 2, 8).  At the time Plaintiff was hired, he understood the basic function of the job was to "plan, organize, direct and coordinate the team members and resources of the restaurant for the efficient, well prepared and profitable service of food and beverages, including both of [Wheatleigh's] restaurants, banquets, room service, pool service, and special events" (Def. SOF ¶ 7; Pl. Resp. ¶ 7).

Plaintiff testified in his deposition that his primary responsibility as restaurant manager was to "make all operation of the restaurant run efficiently, including supervising the staff" (Hamel Deposition (Dkt. No. 65-2) ("Hamel Dep.") at 44).  One of Plaintiff's duties was to set the schedule for restaurant department employees (Pl. SOF ¶ 52; Def. Resp. ¶ 52).  However, Wilhelm, who was Wheatleigh's General Manager, would review and modify most of the schedules Plaintiff created (Hamel Interrogatory Answers (Dkt. No. 65-8) ("Hamel Ints.") at 9(d); *see also* Hamel Dep. at 55-56).  Additionally, employees would not consult Plaintiff about time off from work (Hamel Dep. at 16).  Employees would either submit time-off requests to Plaintiff to be passed along to Wilhelm or they would go directly to Wilhelm to negotiate time

---

[1] Because this case is before the court on Defendants' motion for summary judgment, the court sets out any disputed facts in the light most favorable to Plaintiff.  *See Ahearn v. Shinseki*, 629 F.3d 49, 53-54 (1st Cir. 2010) (citing *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004)).  The facts are taken from the consolidated statement of facts (Dkt. No. 79), which includes Defendants' statement of facts ("Def. SOF"); Plaintiff's responses thereto ("Pl. Resp."); Plaintiff's statement of facts ("Pl. SOF"); and Defendants' responses thereto ("Def. Resp."); as well as from the materials cited in the record.

off (Hamel Ints. at 9(k); Hamel Dep. at 16).  Plaintiff did not have authority to approve or deny employee time-off requests (Hamel Ints. at 9(k); Hamel Dep. at 16).

Plaintiff's duties also included assigning servers to tables (Def. SOF ¶ 31; Pl. Resp. ¶ 31). However, Plaintiff needed approval from Wilhelm to reassign employees within the restaurant department (Pl. SOF ¶ 64; Def. Resp. ¶ 64).  This approval was withheld on at least one occasion (Pl. SOF ¶ 67; Def. Resp. ¶ 67).

Plaintiff conducted daily staff meetings prior to service (Def. SOF ¶ 30; Pl. Resp. ¶ 30). The meetings were run by Wilhelm, Plaintiff, and the sommelier (Def. SOF ¶ 30; Pl. Resp. ¶ 30). About twenty to thirty percent of the time, however, Wilhelm would not be present, and Plaintiff would lead the meeting himself (Def. SOF ¶ 30; Pl. Resp. ¶ 30).  Plaintiff also attended head of department meetings where Wheatleigh departmental business was discussed (Def. SOF ¶ 33; Pl. Resp. ¶ 33).

Plaintiff helped to create a checklist for restaurant staff to use while closing the restaurant (Def. SOF ¶ 28; Pl. Resp. ¶ 28).

Plaintiff was not involved in employee payroll other than manually entering hours from the printed schedule into the scheduling software (Def. SOF ¶ 28; Pl. Resp. ¶ 28; Hamel Dep. at 96; Hamel Ints. at 9(r)).  The training manager, Sophie Wilhelm, was responsible for providing basic training to employees (Pl. SOF ¶ 56; Def. Resp. ¶ 56).  Plaintiff would make sure that training was implemented on a day-to-day basis when he was participating in service (Def. SOF ¶ 16; Pl. Resp. ¶ 16).  Plaintiff was responsible for hearing employee complaints (Def. SOF ¶ 19; Pl. Resp. ¶ 19).  Plaintiff lacked authority to discipline or reprimand employees (Affidavit of Christian Hamel (Dkt. No. 72-1) ("Hamel Aff.") at ¶ 6).

3

Wilhelm set the budget for the restaurant department (Pl. SOF ¶ 65; Def. Resp. ¶ 65). Plaintiff had limited participation in food or beverage ordering (Hamel Dep. at 23). Before Defendants hired a dedicated sommelier, Plaintiff dealt directly with third-party wine vendors, but once the sommelier was hired, he no longer had responsibility for that duty (Hamel Dep. at 24).

Plaintiff had some involvement in keeping inventory. In particular, he was responsible each month for a wine and alcohol inventory, but he was not involved with glassware, tableware, or supplies and machinery inventories (Hamel Ints. at 9(l)).

Plaintiff would receive customer complaints in the restaurant and would report them to Wilhelm, who ultimately addressed them (Hamel Dep. at 24). Plaintiff did have the discretion to adjust patron checks when appropriate, such as when the food was not "on-par" (Def. SOF ¶ 23; Pl. Resp. ¶ 23).

At times, Plaintiff acted as sommelier and waiter while employed by Defendants (Pl. SOF ¶ 48; Def. Resp. ¶ 48). This included occasions where Wilhelm put Plaintiff on the schedule as a waiter (Hamel Dep. at 98-99). Plaintiff also cleaned the restaurant, glasses, candles, tables, and wine cellar, set tables, greeted guests, bartended, served coffee, performed room service, slept over at the premises in case a guest needed assistance overnight, and answered telephones (Pl. SOF ¶ 49; Def. Resp. ¶ 49).

II.     DISCUSSION

    A. <u>Standard of Review</u>

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' when a rational factfinder could resolve it either direction." *Mu v.*

*Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)). "A fact is 'material' when its (non)existence could change a case's outcome. *Id*. (citing *Borges*, 605 F.3d at 5).

A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325). If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).

B.  Fair Labor Standards Act

The overtime provisions of the FLSA establish the general rule that employees must be compensated at a rate not less than one and one-half times their regular rate for all hours worked in excess of 40 during a single workweek. 29 U.S.C. § 207(a)(1). Relevant to this case, an employer is exempted from this general rule for employees in a "bona fide executive … capacity." *Id.* § 213(a)(1). The employer bears the burden of establishing an exemption. *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir. 1995). A job title is not

determinative of whether an employee is exempt under the FLSA. *Cash v. Cycle Craft Co., Inc.*, 482 F. Supp. 2d 133, 136 (D. Mass. 2007), *aff'd*, 508 F.3d 680 (1st Cir. 2007) (citing 29 C.F.R. § 541.2). "Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description." *Pippins v. KPMG, LLP*, 921 F. Supp. 2d 26, 42 (S.D.N.Y. 2012) (citations omitted).

"Pursuant to regulations issued by the Secretary of Labor, an employer seeking to establish that an employee is an exempted 'executive' must show: (1) the employee's salary is at least $455 per week, (2) the employee's 'primary duty' is management, (3) the employee 'customarily and regularly directs the work of two or more other employees,' and (4) the employee 'has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.'" *Marzuq v. Cadete Enters., Inc.*, 807 F.3d 431, 435 (1st Cir. 2015) (quoting 29 C.F.R. § 541.100(a)). "Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." 29 C.F.R. § 541.106(a). However, each of the four requirements must be met for the exemption to apply. *Marzuq*, 807 F.3d at 435. "A genuine dispute as to any of the four requirements is sufficient to deny summary judgment." *Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2017 WL 1217116, at *7 (D. Mass. Mar. 31, 2017) (citing *Marzuq*, 807 F.3d at 435).

Plaintiff had conceded that he directed the work of at least two full-time Wheatleigh employees (or their equivalent), thereby satisfying the third element under 29 C.F.R. §

541.100(a) (Def. SOF ¶ 37; Pl. Resp. ¶ 37).  The parties disagree as to whether the undisputed material facts support the remaining three elements.  The court addresses each in turn.

      1. <u>Salary Requirement</u>

The first requirement for the executive exemption is that the employee be paid at least $455 per week on a salary basis.  29 C.F.R. § 541.100(a)(1).  Plaintiff was paid $951.53 per week before taxes regardless of how many hours he worked during his employment with Wheatleigh (Def. SOF ¶ 10; Pl. Resp. ¶ 10), which satisfies the dollar amount.[2]  Plaintiff, however, disputes that he received this pay on a salary basis.  This is so because, according to Plaintiff, he routinely received cash and credit card tips (Hamel Aff. at ¶4).  Defendants dispute that Plaintiff routinely received tips but acknowledge that, on occasion, Plaintiff received additional earnings from service charges for helping during special events (Def. Resp. ¶ 46).

The regulations establish that an employee is considered to be paid on a "salary basis" "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).  Plaintiff cites to *Wu v. Natural Tofu Rest. Corp.*, 16-cv-3613-ARR-ST, 2018 WL 1009274, at *5 (E.D.N.Y. Feb. 20, 2018), to support the contention that an employee who receives tips or is part of a tip pool is not paid on a salary basis.  However, *Wu* is readily distinguishable.  The plaintiff in *Wu* was not paid a predetermined amount each pay period, but rather her pay varied each week depending on how much she worked.  *Id*. at *5.  Because she

---

[2] While the parties agree for purposes of summary judgment that Plaintiff's gross weekly wages were $951.53, Defendants have submitted payroll records reflecting that Plaintiff was paid $961.53 per week for the first seven weeks, $965.00 per week for the next six weeks, and $1,070 for the remaining 30 weeks of his employment (Dkt. No. 65-9).  Plaintiff has denied the accuracy of the payroll records (Pl. Resp. at ¶¶ 12-13).  Because this discrepancy has no legal significance, the court proceeds with its analysis using the $951.53 figure.

was paid less for a half day of work than a full day, *id*. at *1, her pay was "subject to reduction because of variations in the … quantity of the work performed." 29 C.F.R. § 541.602(a). Plaintiff here received the same amount – $951.53 per week – without any reduction based on how well or how much he worked.  The tips that Plaintiff claims he received, or the service charges that Defendants acknowledge, were in addition to the predetermined weekly amount, meaning that they would have no bearing on his status as an exempt employee.  *See Tomaz v. MAX Ultimate Food, Inc.*, Civil Action No. 19-10533-RGS, 2020 WL 5517458, at *4 (D. Mass. Sept. 14, 2020) (citing *O'Brien v. Town of Agawam*, 350 F.3d 279, 293 (1st Cir. 2003)) ("That Tomaz … was permitted to keep tips from customers … has no bearing on his status as an exempt employee.").  Thus, Defendants have satisfied the first requirement of the exemption.

2. The "Primary Duty" Requirement

The second requirement for the executive exemption is that the employee's "primary duty" be "management."  29 C.F.R. § 541.100(a)(2).  Pursuant to the Secretary of Labor's regulations, "management" activities include, but are not limited to:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.  An employee's "primary duty" is management when it is "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  *Id*.  The regulations lay out a list of four non-exhaustive factors to consider when determining the primary duty of an employee: (a) "the relative importance of the exempt duties as compared with other types of duties;" (b) "the amount of time spent performing exempt work;" (c) "the employee's relative freedom from direct supervision;" and (d) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  *Id*.

*(a) Factor One: Relative Importance of Exempt Duties*

The parties agree that Plaintiff performed both managerial and non-managerial duties, but they dispute the relative importance of each.  Defendants maintain that the relative importance factor weighs in their favor.  Defendants rely largely on Plaintiff's deposition testimony that he considered himself to be the restaurant manager and that "[p]rimarily [he] was to make all operation of the restaurant run efficiently, including supervising the staff," to support their contention that Plaintiff's managerial duties were more important than his non-managerial duties.  Defendants claim that the restaurant could conceivably have continued to operate if Plaintiff had ceased to perform his nonexempt tasks, but that successful operation of the 5-star establishment required Plaintiff to perform his exempt tasks.  Plaintiff counters that the record supports the conclusion that Plaintiff's non-exempt duties were significantly more important than his exempt duties or at least calls that factor into question.  Plaintiff notes that at his deposition he identified Wilhelm as being the individual in charge at the restaurant, and he has submitted an affidavit

9

averring that he "rarely had time to perform managerial duties" (Hamel Aff. at ¶ 5). Moreover, according to Plaintiff, there are numerous questions of fact pertaining to which managerial tasks Plaintiff was responsible for and how often he performed them.

For purposes of summary judgment, there are factual disputes that preclude a finding for Defendants on this factor. Under the relative importance factor, "courts must compare the importance of the plaintiff's managerial duties with the importance of her non-managerial duties, keeping in mind the end goal of achieving the overall success of the company." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505 (6th Cir. 2007). In a case such as this one, where "[t]he record contains evidence that [P]laintiff['s] managerial and non-managerial duties were both essential for the smooth functioning of the[ ] restaurant," the question of "whether the 'relative importance' of duties factor supports the overtime exemption cannot be determined without a factfinder's judgment on the impact of the [P]laintiff['s] varied undertakings." *Marzuq*, 807 F.3d at 440-441.

It is undisputed that Plaintiff performed a variety of non-managerial tasks including acting as a waiter and sommelier, cleaning the restaurant, glasses, candles, tables, and wine cellar, setting tables, greeting guests, bartending, serving coffee, performing room service, sleeping over at the premises in case a guest needed assistance overnight, and answering telephones. According to Plaintiff, these non-managerial duties took precedence over his managerial duties and he was engaged in these non-managerial duties to such a degree that he rarely had time to perform managerial duties. Thus, contrary to Defendants' assertion, it is far from undisputed that the establishment could have continued to operate without Plaintiff performing these non-managerial tasks.

Additionally, Plaintiff has submitted evidence he asserts calls into question the importance of his managerial tasks in his day-to-day work.  For example, while Plaintiff had initial responsibility for setting the schedule, Wilhelm would review and usually modify the schedule Plaintiff put together.  Plaintiff did not handle employee time-off requests and, in fact, did not have the authority to approve or deny time-off requests.  Plaintiff similarly did not have the authority to reassign employees within the department or to discipline or reprimand employees.  He was largely uninvolved in employee payroll, had minimal involvement in training staff, and did not set the budget for the department.  Accordingly, the evidence submitted by the parties presents a disputed issue of material fact as to whether Plaintiff's managerial duties as restaurant manager were more important to Defendants than his nonmanagerial duties.

*(b) Factor Two: The Amount of Time Spent Performing Exempt Work*

The second factor to be considered in determining whether Plaintiff's primary duty was management is the amount of time Plaintiff spent performing exempt work.  The regulations provide guidance regarding this factor. While "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," it is not a sine qua non.  29 C.F.R. § 541.700(b).  Conversely, "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id*.  "Thus, the amount of time spent on exempt work is useful, but not dispositive of the primary duty inquiry." *Roberts*, 2017 WL 1217116, at *8.

Defendants have stipulated that they do not know the amount or percentage of time Plaintiff spent performing exempt versus non-exempt work (Pl. SOF ¶ 51; Def. Resp. ¶ 51).

11

Plaintiff avers in an affidavit that he "rarely had time to perform managerial duties" because he "nearly always had to perform non-managerial duties" (Hamel Aff. at ¶ 5).  Defendants challenge this representation in Plaintiff's affidavit as conflicting with his prior testimony.  When "a party has given 'clear answers to unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory.'" *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 54 (1st Cir. 2000) (quoting *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)).  However, the portions of Plaintiff's deposition testimony that Defendants identify do not clearly contradict Plaintiff's statement in his affidavit regarding the amount of time he spent performing exempt versus non-exempt work and, therefore, the court accepts Plaintiff's statement for purposes of summary judgment.

Nevertheless, Defendants argue the amount of time factor is not applicable in the restaurant service context of this case.  Defendants cite to 29 U.S.C. § 213(a)(1) for the proposition that the FLSA specifically exempts service executives from the requirement that a majority of their time be spent performing pure management duties.  The pertinent language of section 213(a)(1) provides that "an employee of a … service establishment shall not be excluded from the definition of employee employed in a bona fide executive capacity … because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive … activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities." 29 U.S.C. § 213(a)(1).  This provision stands for the proposition that an employee in a service industry who performs both executive and non-executive duties may not be excluded from the definition of an exempt executive employee because of the number of hours he devotes to non-executive activities, *if* he devotes less than 40

percent of his time to non-executive duties. Thus, the provision is not a wholesale exemption for service executives as Defendant claims. Moreover, Defendants have acknowledged that they cannot prove the amount of time Plaintiff spent performing non-executive duties. Thus, they have not established that Plaintiff spent less than 40 percent of his time on non-executive duties.

Defendants next argue that even if the time factor applies to this case, the undisputed facts demonstrate that Plaintiff concurrently performed exempt and non-exempt tasks. Pursuant to Department of Labor regulations, "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of 29 C.F.R. § 541.100 are otherwise met." 29 C.F.R. § 541.106 (a). The regulations explain that "[g]enerally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods." *Id*. By way of example, the regulations describe an assistant manager in a retail establishment who performs such work as serving customers, cooking food, stocking shelves, and cleaning the establishment. Performance of such non-exempt work would not preclude the executive exemption if the employee's primary duty is management because an assistant manager simultaneously can supervise employees and serve customers or direct the work of other employees and stock shelves. *Id*.

Defendants argue that Plaintiff is like the assistant manager in the example because "the undisputed facts demonstrate that Plaintiff was always engaged in concurrently managing the restaurant while performing other non-exempt tasks" (Dkt. No. 64 at 10-11). While a factfinder might find this to be the case, such a finding would require resolving factual disputes. While

Plaintiff did testify to performing non-exempt tasks and exempt duties concurrently in certain circumstances, he did not testify that he was always able to do so. Moreover, Plaintiff has submitted an affidavit stating that he could not always concurrently supervise restaurant staff and perform non-exempt tasks. His ability to do so was limited by the attention the non-exempt task required as well as the proximity to restaurant staff. Plaintiff offers the example of cleaning glassware in the kitchen; according to Plaintiff, when he was engaged in this task, he could not supervise servers in the dining room because he could not see, hear, or communicate with them (Hamel Aff. at ¶ 3).

Thus, on the record before the court, a factfinder could conclude that Plaintiff "rarely" performed managerial duties because he "nearly always had to perform non-managerial duties," and there is a material dispute as to how often Plaintiff was able to perform exempt and nonexempt duties simultaneously. Given this record, the court cannot find that the amount of time factor weighs in favor of either party.

*(c) Factor Three: Relative Freedom from Direct Supervision*

The parties dispute Plaintiff's relative freedom from supervision. Defendants argue that Plaintiff operated with relative freedom from supervision even though Wilhelm was often present at the facility. Plaintiff paints a different picture. According to Plaintiff, he did not hold much managerial authority and for the limited managerial authority he did possess, he was closely supervised by Wilhelm.

"[T]he third factor considers only the '*relative* freedom from supervision'; it does not demand complete freedom from supervision, such that she is answerable to no one, as this would disqualify all but the chief executive officer from satisfying this factor of the primary duty inquiry." *Thomas*, 506 F.3d at 507. Viewing the record in the light most favorable to Plaintiff,

as is required, it appears that Plaintiff had very little freedom from direct supervision. Most of Plaintiff's schedules were revised by Wilhelm. Plaintiff could not reassign employees within the restaurant department without Wilhelm's approval. Plaintiff could not discipline employees. He had minimal involvement in employee payroll and training. He did not set the budget for the restaurant, and he only handled wine orders before Defendants hired a dedicated sommelier. Thus, it cannot be said on the basis of this record that the third factor weighs in favor of Defendants.

*(d) Factor Four: Relationship Between Plaintiff's Salary and the Wages Paid to Hourly Employees for Similar Nonexempt Work*

The fourth factor to be considered is the wage differential between the purported exempt executive's salary and the wages paid to hourly employees who perform similar non-exempt work. This factor can illuminate the importance the employer places on the additional management duties. *Bucceri v. Cumberland Farms, Inc.*, No. 15-CV-13955-IT, 2019 WL 3755442, at *5 (D. Mass. July 18, 2019). "If the differential with the next highest paid employee is large, the different wage rates support the conclusion that the managerial duties are of importance and thus may be the employee's 'primary duties,' and if the differential is small, the wage rates support the conclusion that the management duties are not that important to the employer, and are unlikely to be the employee's primary duties." *Id*.

Here, Plaintiff was paid $951.53 per week before taxes. Defendants have submitted payroll records showing that hourly employees in the restaurant department were paid between $5.00 and $12.00 per hour (Dkt. No. 65-9). If Plaintiff worked 40 hours per week, his pay would work out to $23.79 per hour, which is nearly twice as much as the highest paid hourly employee. Thus, at first glance, this factor would appear to weigh in Defendants' favor. However, for several reasons, the court is unable to conclude that this factor weighs in favor of either party.

15

First, "[a]n accurate comparison of weekly and hourly wages necessarily depends on the number of hours attributed to the salaried employee[ ]," *Marzuq*, 807 F.3d at 444, and the record does not reflect the number of hours Plaintiff worked. This information is relevant for a second reason as well. "[A] fair comparison of wages … needs to take into account that, if managers were compensated like hourly employees, hours worked over forty would be paid at the overtime rate of time-and-a-half." *Id*. at 445. And thirdly, "the hourly employees also received tip income, increasing their earnings by some margin." *Id*. In order to make a fair comparison between Plaintiff's salary and the hourly employees' compensation, one needs to know how much tip income to add. *Id*. Here again, the record is silent as to how much tip income the hourly employees made. Thus, on this record, the relative wage factor does not support the conclusion that Plaintiff's primary duty was management.

*(e) The "Primary Duty" Requirement Overall*

Defendants have failed to establish that any of the four factors to be considered under the "primary duty" inquiry weigh in their favor. As such, it cannot be concluded on summary judgment that Plaintiff's "primary duty" was management. Because Defendants have failed to meet their burden on the "primary duty" element of the executive exemption, they are not entitled to summary judgment. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012) ("[S]ummary judgment is appropriate only if all reasonable factfinders would conclude that the managerial portions of plaintiffs' jobs are their 'primary duties.'"). The court nonetheless proceeds to analyze the remaining factors.

3. The Hiring/Firing Requirement

The fourth requirement for the executive exemption is that the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the

16

hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4).  Defendants admit that Plaintiff did not have unilateral authority to hire or fire other employees; instead, they argue that Plaintiff's suggestions and recommendations were given "particular weight."  The regulations provide that "[t]o determine whether an employee's suggestions and recommendations are given 'particular weight,' factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105.  Further, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher-level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." *Id.*

Defendants argue that Plaintiff's "employment agreement" expressly delineates the responsibility to "coordinate with the Human Resources Manager regarding pre-screening, hiring, counseling, evaluation, disciplining and termination (if needed) of employees" (Dkt. 65-3).  Defendants additionally note that Plaintiff attended two career fairs on Wheatleigh's behalf and that he interviewed at least five candidates for employment, all of whom were hired.  Finally, Defendants point out that Plaintiff recommended an acquaintance for the position as Wheatleigh's sommelier, and that individual was ultimately hired.

There are problems with Defendants' arguments.  First, Plaintiff disputes that the document Defendants identify as an "employment agreement" detailed the duties and expectations of his employment (Pl. Resp. at ¶ 3).  Second, while Defendants argue that Plaintiff

17

interviewed at least five candidates for employment, they identify only four in their statement of material facts (O'Brien, Li, Leung, and Graziani), and Plaintiff denies interviewing one of them (Leung) (Def. SOF ¶¶ 40-43; Pl. Resp. ¶¶ 40-43).  Even more significantly, while Defendants argue in their brief that all of the candidates were offered employment, this contention is not supported by their statement of material facts, nor does the statement of material facts reveal whether Plaintiff recommended that they be hired.  Thus, the record does not support the conclusion that Plaintiff's recommendations as to any of these four candidates were followed.  Defendants' representations about the career fair suffer from the same shortcoming.  Plaintiff admits attending two career fairs on Defendants' behalf, and Defendants cite Plaintiff's deposition testimony that he did some interviews, gave feedback to management, and was given the "go-ahead" on which one(s) to hire (Def. SOF ¶ 45).  The record simply does not establish one way or the other whether Defendants followed Plaintiff's recommendations as to which one(s) to hire or not.

     Thus, as it stands, the record establishes only that Plaintiff recommended an acquaintance for a position with Wheatleigh, that the individual was interviewed by General Manager Marc Wilhelm, and that he was hired.  At the summary judgment stage, evidence that the Plaintiff recommended one acquaintance for a position who was interviewed and hired by someone else is insufficient to conclusively establish that Defendants relied on Plaintiff's input enough that it was given "particular weight."  Moreover, there is contrary evidence in the record:  according to Plaintiff, he requested Defendants not hire a candidate named Dana for a position in the restaurant department, and she was hired (Pl. SOF ¶ 74; Def. Resp. ¶ 74).  Therefore, Defendants also have not carried their burden of proving that there are no disputes of material fact as to the

fourth element for the executive exemption and are not entitled to summary judgment in their favor.

### III.     CONCLUSION

For the above-stated reasons, Defendants' motion for summary judgment (Dkt. No. 63) is DENIED.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  August 10, 2021